**Wayne HARTER and Robert Payne, Plaintiffs,**

**v.**

**C.D. VERNON, individually and in his official capacity as Sheriff of Rockingham County, Defendant.**

**No. CIV. A. 3:95CV00075.**

United States District Court, M.D. North Carolina, Rockingham Division.

Nov. 5, 1997.

Martha A. Geer, Patterson, Harkavy & Lawrence, Raleigh, NC, for Plaintiffs.

James Redfern Morgan, Jr., Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for Defendant.

James Edwin Pons, Office of Guilford County Atty., Greensboro, NC, for Movant Guilford County.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

The facts of this case are set out in this court's summary judgment opinion of March 22, 1996, and will not be repeated here. *See Harter v. Vernon,* 953 F.Supp. 685 (M.D.N.C.), *aff'd,* 101 F.3d 334 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997). This case is presently before the court on Defendant Vernon's motion for reconsideration of that order denying summary judgment to Defendant in his official capacity on Plaintiffs' First Amendment claim, based on *Jenkins v. Medford,* 119 F.3d 1156 (4th Cir.1997) (en banc), a case decided subsequent to this court's decision but which Defendant argues controls the result here. This court granted the motion and on October 1, 1997, heard oral argument on the matter. A careful review of the court of appeals' decision in *Jenkins* leads this court to believe that it mandates the result Defendant seeks, and that Defendant Vernon is entitled to summary judgment on Plaintiffs' First Amendment claims.

The Fourth Circuit in *Jenkins* faced a complaint quite similar to the one presently before the court and held that:(1) "elevat[ing] political support to a job requirement" implicates the constitutional analysis of political patronage developed in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); and (2) under the policymaker exception to *Elrod–Branti,* a sheriff may terminate deputies who do not support him. *See*

*Jenkins,* 119 F.3d at 1160 (internal quotation marks omitted); *id.* at 1164–65. The plaintiff deputies in *Jenkins* asserted that they were dismissed "for failing to support [defendant's] election bid, for supporting other candidates, and for failing to associate themselves politically with [defendant's] campaign." *Id.* at 1158. In this case, Plaintiffs complain that they were dismissed because "they were perceived by Defendant Vernon to be supporters of W.W. Page" (Vernon's party primary opponent) and "because of their political affiliation or activities." Compl. ¶¶ 13 & 30. In essence, Plaintiffs here, as in *Jenkins,* failed to support Defendant's election bid and failed to associate themselves politically with Defendant's campaign. *See* Payne Decl. ¶ 4; Harter Decl. (10/1/95) ¶ 4. However, Plaintiffs did not support Defendant's opponents or associate themselves politically with their campaigns.

Although this court originally analyzed Plaintiffs' allegations as retaliation for speech implicating *Pickering v. Board of Educ. of Township High School Dist.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (*see Harter,* 953 F.Supp. at 694–95, relying in part on the court of appeals decision in *Jones v. Dodson,* 727 F.2d 1329 (4th Cir.1984)), the Fourth Circuit clearly held in *Jenkins* that a public employee's discharge allegedly for failure to associate with an employer's campaign states a political affiliation claim under *Elrod–Branti.* *See Jenkins,* 119 F.3d at 1160. On this point even the dissenting judges agreed. *See id.* at 1165 (Motz, J., dissenting) and *id.* at 1171 (Ervin, J., dissenting).

Even though Plaintiffs here were neutral during the campaign, whereas the plaintiffs in *Jenkins* had "worked for or otherwise supported" the defendant's opponents, *id.* at 1159, Plaintiffs' complaint nonetheless fails under *Jenkins.* Plaintiffs argue that this count should distinguish *Jenkins* on the ground that neutrality is not an accurate proxy for loyalty. However, drawing such fine distinctions appears to violate the intent of the Fourth Circuit in *Jenkins* to curtail litigation against sheriffs for dismissing deputies who are not loyal to them, and to end

the practice of courts weighing a deputy's actual or potential capacity for disloyalty on the basis of a deputy's political activities or affiliations. Such litigation will continue to occur if courts must attempt to choose gradations up or down a scale before deciding whether sheriffs must defend their decisions in political dismissal cases.

If sheriffs may require loyalty of their deputies, then they must have some discretion to determine what constitutes disloyalty. For courts to second-guess a sheriff's lack of confidence in an actually or potentially disloyal deputy would seriously undermine the effort the Fourth Circuit made in *Jenkins* to draw a bright line allowing sheriffs to dismiss deputies either for their political affiliation or campaign activity.

Although the Fourth Circuit held in *Jenkins* that the position of deputy sheriff is one for which political affiliation and loyalty are appropriate job requirements, the court of appeals limited its holding to deputy sheriffs "actually sworn to engage in law enforcement activities on behalf of the sheriff." *Jenkins,* 119 F.3d at 1165. The court went on to state that this limitation is intended "to caution sheriffs that courts examine the job duties of the position, and not merely the title, of those dismissed." *Id.* In this regard, the Fourth Circuit directed the district courts to examine "the specific position at issue." *Id.* at 1164. If the position resembles " 'a policymaker, a communicator, or a privy to confidential information,' then loyalty to the sheriff is an appropriate requirement for the job." *Id.* (footnote omitted) (citing *Stott v. Haworth,* 916 F.2d 134, 141–42 (4th Cir.1990)). In conducting this inquiry, .

> courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office. The relevant inquiry is to the function of the public office in question and not the actual past duties of the particular employee involved. Thus, if an office holder performs fewer or less important functions that usually attend his position, he may still be exempt from the prohibition against political termination if his position inherently encompasses tasks which make

his political affiliation an appropriate requirement for effective performance.

*Stott,* 916 F.2d 134, 142 (4th Cir.1990) (internal quotation marks and citations omitted).

■ It is undisputed that Plaintiff Payne was a deputy sheriff actually sworn to engage in law enforcement activities. At the time of his termination, Payne's position as deputy required him to engage in law enforcement activities as a road deputy. Compl. ¶ 2. As a deputy sheriff, Plaintiff Payne was a policymaker who could lawfully be terminated for political reasons under the *Elrod–Branti* exception to prohibited political termination. *Jenkins,* 119 F.3d at 1164. Therefore Defendant Vernon is entitled to judgment as a matter of law on Plaintiff Payne's Section 1983 claim.

Like Plaintiff Payne, Plaintiff Harter was also a deputy actually sworn to engage in law enforcement activities on behalf of the sheriff. Harter Dep. at 43; Vernon Aff. ¶¶ 9–14 & Exs. C, D, E & F. Harter held a "General Certification" as deputy sheriff and an "Advanced Certificate–Deputy" from the North Carolina Sheriffs' Education and Training Standards Commission. Vernon Aff. ¶¶ 10, 14 & Exs. C & E.

■ Plaintiff Harter argues that his case is distinguishable from that of Plaintiff Payne or the deputies in *Jenkins* because he was not firearm certified and thus could not serve as patrol deputy. *Jenkins* and *Stott,* however, direct the court to focus on the powers inherent in the office, not the Plaintiffs' particular functions on a given day. The majority in *Jenkins* rejected the dissenting view that the court should engage in a particularized examination of the actual duties of each sworn deputy. See *Jenkins,* 119 F.3d at 1165–66 (Motz, J., dissenting). It would be inconsistent with the rationale of *Jenkins* for this court to engage in a particularized analysis of every duty of a terminated deputy sheriff who was actually sworn to engage in law enforcement activities on behalf of the sheriff. The evidence in the record shows that Deputy Harter was a sworn law enforcement officer who happened to work in the communications center. As a sworn deputy sheriff, Plaintiff Harter occupied a policymaking position under *Jenkins* and he, like

Plaintiff Payne, could lawfully be terminated for political reasons under the *Elrod–Branti* exception to prohibited political terminations. *Jenkins,* 119 F.3d at 1164. Accordingly, Defendant is entitled to judgment as a matter of law on Hatter's Section 1983 claim.

Plaintiffs' remaining claims arise under the North Carolina Constitution's guarantee of free speech and the common law of wrongful discharge. In the absence of a federal action, these state law claims should also be dismissed. *See id.* at 1165.

For the foregoing reasons, this court has reconsidered its denial of summary judgment on Plaintiffs' First Amendment claims in light of *Jenkins v. Medford.* Following the Fourth Circuit's directives in *Jenkins,* the court now finds that Defendant is entitled to summary judgment as to these claims. Plaintiffs' remaining claims will be dismissed without prejudice.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.